**Eduardo De La MARIA, Plaintiff,**

v.

**POWELL, GOLDSTEIN, FRAZER & MURPHY, a Georgia Partnership and John L. Gornall, Jr., Defendants.**

**Civ. A. No. C83–852A.**

United States District Court, N.D. Georgia, Atlanta Division.

July 8, 1985.

James D. McGuire, Kane, McGuire & Whatley, Gerard Carty, Taylor W. Jones, Jones, Ludwick & Malone, Atlanta, Ga., for plaintiff.

Emmet J. Bondurant, III, Bondurant, Miller, Hishon & Stephenson, H. Lamar Mixson, Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, Chief Judge.

The above-styled action is before the Court on the defendants' motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. After an exhaustive review of over 200 pages of briefs, the trial transcript, and the relevant case law, this Court concludes that it must grant the defendants' motion for a judgment notwithstanding the verdict.

### I. FACTUAL BACKGROUND

In December, 1978, the plaintiff, Eduardo De La Maria, engaged defendant Powell, Goldstein, Frazer & Murphy, (Powell, Goldstein), to render certain legal services to him in connection with a proposed business venture in Georgia. At that time, the plaintiff was the President of a Spanish corporation involved in the production and manufacture of jewelry. The plaintiff wanted to move this business from Spain to the United States.

On May 29, 1979, defendant John Gornall, a lawyer in the Powell, Goldstein firm, sent the plaintiff a letter stating the following in pertinent part:

Dear Eduardo:

Recently I mentioned your wish to establish a facility here in Georgia to a *good client* of ours named John E. Hayes, Jr. John expressed interest in investing in your company here in the United States. If John were to become involved, *he always does so on a fifty percent/fifty percent basis.*

*I believe you and John would make compatible business partners* and that having a U.S. investor with a substantial equity investment in your U.S. Company will make it much easier to obtain financing here.... (emphasis added)

In late July and early August, 1979, the plaintiff visited the United States to attend a jewelry show in Atlanta. During this

visit to Atlanta, the plaintiff was introduced to Mr. Hayes by Mr. Gornall. The plaintiff and Mr. Hayes had several meetings during which they discussed the terms of their business venture. Mr. Gornall was not present during all of these meetings. By the time the plaintiff was ready to return to Spain, the two men had agreed in principle to go into the jewelry business together. They agreed that there would be four equal shareholders in the company including the wives of the plaintiff and Mr. Hayes; that the plaintiff would contribute goods to the corporation having a value of approximately $150,000.00; that the Hayes group would invest approximately $200,000.00 in the enterprise; and that the plaintiff would be the president of the company and Mr. Hayes the treasurer. The parties also agreed that the plaintiff would be responsible for running the day-to-day operations of the business.

After this agreement was reached, the plaintiff and Mr. Hayes asked John Gornall to come to Hayes' office where they explained the agreement to him. They also asked Mr. Gornall to draft the documents needed to begin the new corporation. After that meeting, the plaintiff left Atlanta to return to Spain.

The corporation, De La Maria, Inc., was chartered on August 2, 1979. The incorporation documents, employment agreement, and shareholders agreement were all drafted by lawyers at Powell, Goldstein. These documents were delivered to Mr. Hayes who took them to Spain in September, 1979 where they were signed by the plaintiff and his wife.[1]

In November, 1979, the plaintiff moved to Atlanta, Georgia. Shortly thereafter, Mr. Hayes informed the plaintiff that the Hayes group, which consisted of Mr. Hayes, his wife, and a Swiss investor, Mr. Fred Thom, intended to contribute $100,000.00 in cash to the corporation and $100,000.00 in the form of a loan to the corporation. After being so informed, the plaintiff also wanted to make additional changes in the shareholders and employment agreements and prepared notes of these changes and gave them to Mr. Gornall. In addition, the plaintiff decided that the jewelry and molds which he contributed to the corporation should be valued at $213,000.00 instead of the $150,000.00 figure he had discussed with Mr. Hayes in July.

In December and January, 1979, lawyers at Powell, Goldstein drafted various documents on behalf of De La Maria, Inc. These documents included a loan agreement, a promissory note and voting proxies.[2] The plaintiff and the other investors signed these documents in January, 1979.

After the drafting of these documents, the plaintiff and his wife received 50% of the shares of De La Maria, Inc., in return for contributing jewelry, molds, and tools to the corporation. Mr. Hayes' wife and Mr. Thom purchased the remaining 50% of the corporation. Mr. Hayes, although treasurer of the corporation, was not a shareholder.

From January, 1980, to May, 1981, the plaintiff attempted to turn De La Maria, Inc., into a successful jewelry business. The corporation, however, was not successful and by March 31, 1981, had lost over $450,000.00.

On May 1, 1981, there was a special meeting of the Board of Directors of De La Maria, Inc. At this meeting, Mr. Hayes told the plaintiff that the investors were not going to contribute any more money to the corporation to fund the plaintiff's future salary[3] or his past due salary. Mr. Hayes told the plaintiff that he could continue to work for De La Maria, Inc., on a commission basis. After the plaintiff refused this offer, Mr. Hayes abruptly left the room. Also at this meeting, Mr. Gor-

---

1. Also in September, 1979, Mr. Hayes agreed to allow De La Maria, Inc., to lend the plaintiff $20,000.00 for a downpayment on his new home in Atlanta. This loan was evidenced by a promissory note and was funded from deposits placed by the Hayes group in the corporation's bank accounts.

2. The content of these agreements will be discussed in Part V of this Order.

3. The plaintiff's brother was also an employee of the company and Mr. Hayes made the same statements as to his salary.

nall told the plaintiff that he should retain another attorney because Mr. Gornall could no longer represent him due to a conflict of interest.[4] There is no evidence in the record that indicates what happened to the assets of De La Maria, Inc., if any existed, subsequent to the May 1, 1981, meeting.

The plaintiff filed this lawsuit on April 29, 1983, against John Gornall and Powell, Goldstein alleging that the defendants were liable for legal malpractice and fraud. The plaintiff later amended his complaint to include allegations that the defendants violated the Securities Laws and the Racketeer Influenced and Corrupt Organizations Act (RICO). The plaintiff's claims under the Securities Laws and RICO were dismissed by this Court upon the defendants' motion for directed verdict. At trial, the jury found for the defendants on the plaintiff's fraud claim and for the plaintiff on the claim of legal malpractice. The jury awarded the plaintiff $140,000.00 in general damages and $1,250,000.00 in aggravated damages.

The plaintiff claims that Mr. Gornall's recommendation of Mr. Hayes to the plaintiff constituted legal malpractice because Mr. Hayes, at the time of the introduction, was involved in numerous lawsuits indicating that he would not be a compatible business partner. The plaintiff blames the failure of De La Maria, Inc., on Mr. Hayes' interference with its business operations.[5] The plaintiff also argues that the defendants drafted the incorporation documents in Mr. Hayes' favor and to the detriment of the plaintiff. Furthermore, the plaintiff contends that Mr. Gornall breached his duties as the plaintiff's attorney due to a conflict of interest, and that Mr. Gornall did not act properly during the May 1, 1981, directors' meeting.

The defendants deny all of these contentions. Also, they argue that, even if they acted improperly, there is no evidence linking their actions to any of the plaintiff's alleged injuries. The defendants contend that the jury's award of punitive damages is not supported by the evidence and is grossly excessive, and that this Court's instructions on such damages were improper under Georgia law. And, the defendants argue that they are entitled to a new trial because this Court erred by granting the plaintiff's motion to strike defendants' Exhibit 114 at the end of the trial.

This Court will first review the appropriate legal standards for ruling on a motion for a judgment notwithstanding the verdict. Then, this Court will detail the essential elements of a legal malpractice claim under Georgia law. Finally, this Court will discuss each of the plaintiff's allegations of malpractice, and its relationship to the plaintiff's alleged injury.

## II. THE LEGAL STANDARDS

In ruling upon a motion for a judgment notwithstanding the verdict under Fed.R.Civ.Pro. 50(b), this Court must consider all of the evidence presented to the jury, not just the evidence which supports the non-movers case. *Boeing v. Shipman*, 411 F.2d 365 (5th Cir.1969, *en banc*). The evidence, however, must be viewed in a light most favorable to the party opposing the motion and all reasonable inferences must be resolved in favor of the non-movant. *Id.* at 374–75. The Court should grant a motion for a judgment notwithstanding the verdict only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Id.*

## III. ELEMENTS OF A LEGAL MALPRACTICE CLAIM

In *Rogers v. Norvell*, 174 Ga.App. 453, 330 S.E.2d 392 (1985), the Georgia Court of Appeals recently restated the elements of a valid claim of legal malpractice under Geor-

---

**4.** The plaintiff testified at trial that Mr. Gornall also told him that there was nothing the plaintiff could do to prevent his "termination" from De La Maria, Inc. The importance of this testimony will be discussed in Part VII of this Order.

**5.** Mr. Hayes was not a named defendant in this suit nor did he testify at trial.

gia law. The *Rogers* Court stated the following:

> [I]t is the general rule ... that in a legal malpractice action the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence and (3) that such negligence was the proximate cause of damage to the plaintiff. *Id.*[6]

The *Rogers* Court emphasized the proximate cause element by stating that "an attorney is liable only for *actual injury* that his client has sustained, and *an act of negligence alone does not create a cause of action in tort without damages* ... [T]he alleged negligence of the attorney must be the proximate cause of the damage to the client." *Id.* (emphasis added). This Court will now apply these principles of Georgia law to the facts of the instant case.

## IV. THE INTRODUCTION OF MR. HAYES TO THE PLAINTIFF.

The plaintiff contends that Mr. Gornall negligently told him that Mr. Hayes was a "good client"; that he would be a "compatible business partner"; and that he "always does business on a fifty percent/fifty percent basis." Applying the *Rogers* requirements to the instant case, in order to state a valid claim of legal malpractice against the defendants based on Mr. Gornall's recommendation of Mr. Hayes as a business partner, the plaintiff must show that Mr. Gornall negligently recommended Mr. Hayes; that the plaintiff would not have entered into business with Mr. Hayes had Mr. Gornall not misrepresented Mr. Hayes' desirability as a potential investor; that Mr. Hayes caused the plaintiff's injuries; and that it was reasonably foreseea-

ble that Mr. Hayes would cause such injuries.[7]

### A. *Was the Recommendation Negligent?*

One of the plaintiff's experts testified at trial that a lawyer has no duty to investigate a client before recommending him to another client. *See* Trial Transcript (TR) at 90, Feb. 11, 1985. The plaintiff's expert did testify, however, that a lawyer does have a duty to disclose any material facts that reflect adversely upon the client whom he is recommending. Tr. at 35, 59, Feb. 11, 1985. Thus, the plaintiff had to show at trial that Mr. Gornall failed to disclose to him the existence of material facts that would have affected the plaintiff's decision to enter into a business arrangement with Mr. Hayes.

At trial, the plaintiff read to the jury the depositions of two former business associates of Mr. Hayes who testified that they had told Mr. Gornall that Mr. Hayes had been involved in prior lawsuits. The plaintiff argues that the non-disclosure of these lawsuits constituted legal malpractice. Mr. Theodore Olsen stated the following in his deposition[8]:

> Q: But you don't recall specifically telling John Gornall at the Atlanta meeting in June of '79 that Hayes was involved in particular litigation?
> A: Well, ... I did bring it up that apparently these lawsuits and allegations are apparently for real and, you know, I was trying to rub it in a little bit.

Olsen Deposition at 31–32.[9]

In addition, Mr. William Irwin, another former business associate of Mr. Hayes, who also was the defendant in a lawsuit brought by Mr. Hayes, testified as follows:

---

**6.** Because the *Rogers* case has not yet been published, this Court will not include the page citations to the quotations from that decision.

**7.** The defendants do not dispute the existence of an attorney/client relationship between Mr. Gornall and the plaintiff.

**8.** The deposition of Mr. Olsen was read to the jury on February 7, 1985, and the deposition of

Mr. Irwin was read to the jury on February 13, 1985.

**9.** Although this discussion occurred after Mr. Gornall wrote the letter of recommendation, the plaintiff convincingly argues that Mr. Gornall had a continuing duty to disclose to the plaintiff the existence of the lawsuits. In any event, this meeting occurred before the plaintiff was introduced to Mr. Hayes by Mr. Gornall.

Q: At any time during your discussions with Mr. Gornall, was there any mention of the litigation problems that you have previously discussed which involved Hayes in California?

A: Yes, there was.

Irwin Deposition at 19.

Mr. Irwin further testified that he told Mr. Gornall about two specific California lawsuits in which Mr. Hayes was a named defendant and that he gave Mr. Gornall the name of a California attorney who could give him more information about those lawsuits. *Id.* at 19–25. This meeting between Mr. Irwin and Mr. Gornall took place in late 1976.

In addition to the deposition testimony noted above, Mr. Gornall admitted at trial that he was aware of a lawsuit brought by Mr. Hayes against Mr. Irwin.[10] At the time of his recommendation of Mr. Hayes to the plaintiff, this lawsuit had not yet been resolved.

The plaintiff argues that the jury could have reasonably found that Mr. Gornall knew about these lawsuits and that his failure to disclose these lawsuits to the plaintiff constituted legal malpractice. Furthermore, the plaintiff argues that Mr. Gornall's statements that Mr. Hayes was a "good client"; "always does business on a fifty percent/fifty percent basis"; and "would make a compatible business partner" were negligently made in light of these lawsuits and the previous business history of Mr. Hayes.[11]

The defendants argue that Mr. Gornall was under no obligation to reveal the existence of the two California lawsuits or the *Hayes v. Irwin* case to the plaintiff because those lawsuits were not material to the plaintiff's decision to enter into a business relationship with Mr. Hayes. The de-fendants point out that one of the California lawsuits was settled adversely to the plaintiffs in 1974 and that the other lawsuit was dismissed for want or prosecution. Furthermore, the *Hayes v. Irwin* case involved Mr. Hayes as a plaintiff, and the defendants argue that it did not reflect adversely upon Mr. Hayes. And, the defendants deny that Mr. Gornall knew of any other lawsuits [12] other than the three mentioned and that there is no evidence in the record to the contrary.[13]

▆ Viewing the evidence in the light most favorable to the plaintiff, this Court finds that a jury could reasonably conclude that at the time of the recommendation, Mr. Gornall knew that Mr. Hayes had been involved in numerous lawsuits arising out of Mr. Hayes' business activities. The jury could also have found that these lawsuits should have been disclosed to the plaintiff. Furthermore, Mr. Gornall admitted during the trial that he was aware of only three other business enterprises that Mr. Hayes was involved in and Mr. Gornall's testimony indicates that none of these businesses were economically successful. *See* Tr. at 213–230, Feb. 20, 1985. Although Mr. Gornall was under no duty to *investigate* Mr. Hayes' background, he certainly was under an obligation to the plaintiff to make representations that he knew were true and accurate. This Court finds that, in light of the lawsuits in which Mr. Hayes was a named defendant and Mr. Gornall's admitted lack of knowledge as to any business successes in which Mr. Hayes was involved, a reasonable jury could find that Mr. Gornall negligently breached his fiduci-

---

**10.** This Court feels compelled to observe that in his depositions in this case, Mr. Gornall denied any knowledge of lawsuits involving Mr. Hayes. At trial, however, Mr. Gornall admitted to having filed an affidavit in the *Hayes v. Irwin* lawsuit and admitted knowledge of that lawsuit.

**11.** At trial, Mr. Gornall admitted that he could remember only three other business deals that Mr. Hayes was involved in and one of them involved Mr. Hayes' gardener. Tr. at 213–230, Feb. 20, 1985.

**12.** The plaintiff was allowed to submit to the jury six other California cases in which Mr. Hayes was a named defendant.

**13.** In light of Mr. Gornall's statement that he and Mr. Hayes were personal friends, Tr. at 244, Feb. 20, 1985, as well as business associates, the jury could have reasonably disbelieved Mr. Gor-

ary duties to the plaintiff by recommending Mr. Hayes as a business partner.[14]

### B. *Proximate Cause*

The plaintiff's burden at trial of proving his claim of legal malpractice with regard to Mr. Gornall's recommendation of Mr. Hayes was not satisfied by merely showing negligence. The plaintiff also had to show that this negligence proximately caused his injuries. *See Rogers, supra.* Therefore, the issue is whether a reasonable jury could have found that Mr. Gornall's negligent recommendation of Mr. Hayes caused the plaintiff's injuries and whether Mr. Gornall could have reasonably foreseen those injuries.

In response to a post-trial question posed by this Court, the plaintiff argued that Mr. Hayes injured the plaintiff in four ways. This Court will now discuss each of these four alleged injuries.

### 1. *Mr. Hayes Duties as Treasurer*

The plaintiff claims that Mr. Hayes, as treasurer of the corporation, wrongfully refused to release to the plaintiff any of the financial documents of the corporation and this refusal led to the demise of De La Maria, Inc. There is no evidence in the record, however, to support the plaintiff's argument that his inability to see the corporation's financial papers was in any way related to the company's failure to sell its jewelry. The plaintiff presented no testimony from any accountant or financial expert to support this conclusion.[15] Further-

more, the plaintiff has not cited this Court to any testimony which indicates that the plaintiff felt this denial of access to financial records caused his business to fail.[16] This Court finds that there is no evidence in the record to support his contention that De La Maria, Inc., failed because Mr. Hayes did not adequately perform his duties as treasurer.

### 2. *Mr. Hayes Interfered with the Business.*

As noted earlier, the parties agreed that the plaintiff was responsible for the manufacturing and selling aspects of De La Maria, Inc. The plaintiff alleges that Mr. Hayes interfered with the business and made it impossible for him to sell his jewelry at a profit. The plaintiff testified that Mr. Hayes interfered with production matters, customer relationships, and selling efforts. Tr. at 117, Feb. 5, 1985. The plaintiff also testified that Mr. Hayes had a negative attitude and that he improvidently fired several key employees. *Id.*

The question before the Court is whether, based only on the plaintiff's self-serving testimony regarding the actions of Mr. Hayes, the jury could have reasonably concluded that Mr. Hayes was responsible for De La Maria, Inc.'s failure to sell jewelry at a profit. Although it is a close question, this Court finds that there is not enough evidence in the record to rationally support such a conclusion. The plaintiff never presented evidence of any specific sale he lost because of Mr. Hayes' wrongful interference with the company.[17] He never dis-

---

nall's denial of any knowledge about the California lawsuits. *See also* fn. 14, *infra.*

**14.** This is especially so because in the *Hayes v. Irwin* lawsuit, Mr. Hayes alleged that Mr. Irwin sent letters to Mr. Hayes' clients telling them about the eight or ten California cases pending against Mr. Hayes. The jury could find, in light of Mr. Gornall's filing of an affidavit in that case, that he had knowledge of these cases. Mr. Gornall admitted at trial that *had* he knowledge of those cases, he would have asked Mr. Hayes about them and if he did not receive a satisfactory explanation, he would have felt obligated to disclose them to the plaintiff or withdraw from representing him. *See* Tr. at 239, Feb. 20, 1985. The jury might have chosen to disbelieve Mr. Gornall's testimony that he didn't know of Mr. Hayes' allegations in the *Hayes v. Irwin* lawsuit.

**15.** This Court is not holding that such expert testimony would always be required to show the reasons why a business failed. But, in this case, the plaintiff never presented to the jury any concrete facts to support his contention that De La Maria, Inc. failed because of Mr. Hayes' transgressions as treasurer of the Company.

**16.** The plaintiff's brief cites to his testimony that he was denied access to important financial documents, *see* Tr. 66–69, Feb. 5, 1984, but there is no citation to any testimony relating that denial to De La Maria, Inc.'s failure to sell jewelry and the Court's review of the record discloses no such testimony.

**17.** The plaintiff suggested in general terms that he lost a deal in Saudi Arabia because Mr. Hayes did not think the deal should go through.

cussed by name the key employees who were fired nor did he name one customer whose relationship with the company was hurt by Mr. Hayes' actions. The plaintiff never discussed in *detail* how Mr. Hayes' negative attitude affected the day-to-day running of the business. There is simply no evidence in the record to indicate that Mr. Hayes' actions directly affected the ability of De La Maria, Inc. to sell its jewelry at a profit.

The case of *Murphy v. Edwards and Warren*, 36 N.C.App. 653, 245 S.E.2d 212 (1978) supports this Court's conclusion.[18] In *Murphy*, the defendant lawyer introduced the plaintiff client to another client of the law firm who was in the business of cattle feeding. The plaintiff invested in the venture and some months later received some payments but no return of his principal. At that time, he discussed reinvesting his principal with the defendant attorneys. A few days later, one of the attorneys learned that the promoter had illegally used other investors' money to pay off personal notes. The lawyer, however, did not disclose this information to the plaintiff client who decided to "roll over" his initial investment. Eventually, the promoter had no assets to pay off his investors and the plaintiff sued the defendant attorneys for malpractice. The jury found for the plaintiff but the appellate court reversed finding that the evidence was insufficient to show that the plaintiff's damages were caused by the defendants' alleged malpractice. The Court stated the following:

> Assuming arguendo ... that the defendants were negligent in performing their duties ... [t]he evidence ... is devoid of any indication that the damages alleged were proximately caused by the negligence ... of the defendants. *There is no evidence from which it can be inferred that, on any of the occasions the*

> *plaintiff invested with the company, it was unable to meet its obligations....* *As the jury was required to determine the actual financial status of ... the company at various points in order to find a causal connection between the acts or omissions of the defendants and the loss of the plaintiff, they were left to base such determinations of actual financial status and resulting loss solely upon speculation and conjecture which will not support a verdict.*

*Id.,* 245 S.E.2d at 217. (emphasis added)

Similarly, in the present case, there is simply no evidence in the record which the jury could rely on to find that Mr. Hayes caused De La Maria, Inc., to fail. The plaintiff did not specify how much money was lost due to deals that Mr. Hayes adversely affected or how much jewelry was not sold because of Mr. Hayes' conduct. There was no documentary evidence submitted to the jury to indicate the extent to which Mr. Hayes negatively affected the business. Without such evidence, the jury could only speculate as to how or if or to what degree Mr. Hayes caused the business to fail and, as noted by the *Murphy* court, such speculation simply cannot sustain a jury verdict.

### 3. *Mr. Hayes Wrongfully Terminated the Plaintiff*

In his brief, the plaintiff claims that he was fired by Mr. Hayes during the May 1, 1981, directors' meeting. He also claims that he was denied past due and future salaries by Mr. Hayes and that Mr. Hayes effectively took control of the company's assets after that meeting.

The plaintiff's argument must fail for several reasons. First of all, the plaintiff does not dispute that Mr. Hayes had met all of his financial obligations to the company prior to the May 1 meeting. Therefore, Mr. Hayes was under no legal obligation to

*See* Tr. at 119–120, Feb. 5, 1985. There is no evidence, however, that indicates that deal would have been profitable or that Mr. Hayes did not correctly veto that deal.

18. This case is obviously in no way binding upon this Court. There is, however, a dearth of case law in Georgia or in the Federal Courts on the issue of attorney malpractice and therefore this Court has had to look to other jurisdictions for guidance.

lend the corporation any more money. Secondly, there is little evidence in the record that indicates what damages the plaintiff suffered as a result of the alleged wrongful termination. In fact, the plaintiff stated in his brief that "whether Mr. Hayes caused the corporation to breach its employment contract with plaintiff or, indeed, *whether the corporation did breach its contract with plaintiff was not an issue before the Court.* The issue before the Court was whether Mr. Gornall rendered proper legal advice to plaintiff during that meeting...." Plaintiff's Response to Defendant's Motion for a Judgment Notwithstanding the Verdict at 28–29 (emphasis added). There was simply no evidence submitted to the jury which could authorize it to estimate what damages the plaintiff allegedly suffered as a result of Mr. Hayes' actions during the May 1 meeting.[19] Furthermore, the plaintiff did not present evidence to sustain a finding that his injuries would have been avoided had he not been "terminated" on May 1, 1981. By March, 1981, the company had already lost over $441,000.00, *see* defendant's Exhibit 99, and there was no indication that its sales were going to improve. Therefore, the main injury the plaintiff complains of, the failure of De La Maria, Inc., was clearly not caused by any of Mr. Hayes' actions during the May 1 meeting. For all of the reasons noted above, this Court finds that the jury verdict cannot be sustained on the basis of Mr. Hayes' actions during the May 1, 1981 meeting.

### 4. *Execution of Promissory Notes*

The plaintiff argues that he was injured by the issuance of promissory notes by the Hayes group subsequent to the May 1, 1981 meeting. The plaintiff claims that these notes were issued "for no other purpose than to strengthen [Hayes'] claim to the substantial assets of the corpora-

tion...." Plaintiff's response of June 14, 1985 at 3. The plaintiff's argument is meritless in light of the fact that there is no evidence in the record suggesting how these notes were ever used, how they strengthened Hayes' claims to the corporate assets, or even what assets were usurped because of the notes. The jury's verdict simply cannot be sustained on this ground.

This Court has found that there is no evidence in the record to sustain a finding that Mr. Hayes proximately caused the failure of De La Maria, Inc., or any of the plaintiff's alleged injuries. Without such evidence, the plaintiff cannot prevail on his claim of legal malpractice based on Mr. Gornall's negligent recommendation of Mr. Hayes as a business partner. As will be discussed below, however, even if this Court concluded that Mr. Hayes proximately caused the plaintiff's injuries, it still could not conclude that the defendants could be held liable for those injuries.

### C. *Were Mr. Hayes' Actions Reasonably Foreseeable?*

■ The plaintiff's argument centers around his proposition that had Mr. Gornall not negligently introduced the plaintiff to Mr. Hayes, the plaintiff would not have entered into business with Mr. Hayes, and De La Maria, Inc., would not have failed. Assuming the truth of the plaintiff's testimony that he would not have entered into the deal with Mr. Hayes had he been informed of the lawsuits and assuming the existence of a causal relationship between Mr. Hayes' actions and the failure of De La Maria, Inc., there is still no evidence in the record to indicate that Mr. Gornall could reasonably have foreseen such actions. Under Georgia law, a person is liable in tort only for those damages "which should

**19.** The issues before this Court would be much more difficult had the plaintiff clearly delineated during trial the damages he suffered as a result of Mr. Hayes' allegedly wrongful manipulation of the assets of De La Maria, Inc. There was little evidence presented on this point, however. In fact, the present whereabouts of the assets of De La Maria, Inc., was never estab-

lished during the trial. More importantly, whatever rights the plaintiff had vis à vis De La Maria, Inc., he still has and, in fact, is pursuing them in state court. Therefore, he cannot show that the defendants' actions proximately caused any injury he has suffered because of De La Maria, Inc.'s failure to pay him his salary or return his assets.

have been reasonably anticipated as the natural and proximate result of an act or omission to act." *Parsons v. Grant*, 95 Ga.App. 431, 438, 98 S.E.2d 219 (1957). The plaintiff in this case wanted Mr. Gornall to find an investor so that he could start a jewelry business in the United States. Mr. Gornall recommended Mr. Hayes to the plaintiff to fill that role. *The evidence is clear that Mr. Hayes invested all the money that he was legally obligated to invest in the business.* Even considering all of the lawsuits that Mr. Hayes had been involved in,[20] there is no evidence in the record to support the proposition that Mr. Gornall could have reasonably foreseen that Mr. Hayes would negatively interfere with the day-to-day business operations of De La Maria, Inc.

■ In sum, this Court has found that a reasonable jury could have concluded that Mr. Gornall negligently recommended Mr. Hayes to the plaintiff because of the non-disclosure of Mr. Hayes' litigation history and Mr. Gornall's admitted lack of knowledge of any successful businesses in which Mr. Hayes was involved. This negligence, however, is not enough to support the jury's verdict. After a review of the entire record, this Court finds that the failure of the plaintiff's jewelry business simply cannot be blamed on the acts or omissions of Mr. Hayes and therefore it cannot be blamed on the defendants.[21] Furthermore, even if this Court assumed that Mr. Hayes caused the business to fail, the plaintiff has not demonstrated that the defendants could have reasonably foreseen such a result. For all of these reasons, this Court holds that the jury's verdict cannot be supported by Mr. Gornall's negligent recommendation of Mr. Hayes to the plaintiff.[22]

## V. THE LEGAL DOCUMENTS

The plaintiff claims that the jury's verdict can be sustained because the defendants drafted corporate documents that favored Mr. Hayes to the detriment of the plaintiff. This Court will first discuss the nature of these documents and their relationship to the corporation. Next, this Court will discuss whether the drafting of these documents constituted legal malpractice. Then, this Court will decide whether the jury could have reasonably concluded that the drafting of these documents proximately caused any of the plaintiff's alleged injuries.

### A. The Documents

At trial, the plaintiff testified that he signed a loan agreement and promissory note which contained provisions that injured him and which were not fully explained to him by Mr. Gornall. These agreements provided that the corporation agreed to pay to Mrs. Hayes and Fred Thom $100,000.00 for a line of credit. The loan agreement also stated that if the company became insolvent or failed to pay any installment of interest or principal, then either Mrs. Hayes or Mr. Thom could declare a default and send notice of that default to the address listed on the agreement, which was Mr. Hayes' business address. *See* Tr. at 152–56, Feb. 6, 1985.

The plaintiff also signed a voting proxy which he claims was negligently drafted. This proxy provided that in the event the

---

**20.** Although these lawsuits were tendered to the jury, there was no evidence presented to link the facts of those lawsuits to any propensity on the part of Mr. Hayes to interfere in businesses in which he invested. Furthermore, it is contrary to common sense to believe that Mr. Gornall could have reasonably foreseen that Mr. Hayes would cause the downfall of a business in which his wife had a significant financial stake and the record discloses nothing to the contrary.

**21.** The plaintiff also argues that he was injured by Mr. Hayes' refusal to fund business trips abroad so that De La Maria, Inc., could expand its business. This argument is devoid of any merit because Mr. Hayes was under no legal obligation to fund such trips.

**22.** The plaintiff's argument, when analyzed carefully, amounts to the following: My business failed and lost hundreds of thousands of dollars because my lawyer recommended to me an investor who meddled in the affairs of the business. Although there may be cases where a lawyer's recommendation could · cause such damage, the record in this case does not support such a conclusion.

corporation defaulted in its payments to Mrs. Hayes or Mr. Thom, one of them could vote one share of the plaintiff's stock and the other could vote one share of his wife's stock. Tr. at 140–145, Feb. 6, 1985. Thus, in the event of a default, the plaintiff would lose voting control of the company. The proxy and the loan agreement, taken together, meant that a notice of default could be sent to Mr. Hayes' office, as opposed to the business headquarters of De La Maria, Inc., and that, upon such notice, the plaintiff would not be able to vote his entire 50% of the company.

### B. *Were the Documents Negligently Drafted?*

The plaintiff argues that the provisions of the loan agreement, promissory note, and voting proxy strongly favored Mr. Hayes and were therefore negligently drafted by the defendants. The plaintiff's experts testified at trial that the defendants breached the applicable standard of care by drafting the documents at issue. Tr. at 43, Feb. 11, 1985, Tr. at 30, Feb. 14, 1985. In light of this expert testimony, and the nature of the documents, this Court finds that the jury could have reasonably concluded that the defendants breached their duty of care to the plaintiff by drafting the loan agreement, promissory note, and voting proxy.

### C. *Did the Plaintiff Understand the Documents?*

■ Under Georgia law, if a client reads and understands documents given to him by an attorney, his signature on those documents relieves the attorney of any liability due to injury resulting from those documents. *Berman v. Rubin*, 138 Ga.App. 849, 227 S.E.2d 802 (1976). In *Berman,* the plaintiff sued his attorney for allowing him to sign a divorce agreement which the plaintiff claimed was negligently drafted. The appellate court affirmed the judgment of the lower court which had granted the attorney's motion for summary judgment. The *Berman* court stated the following:

> Our decision should not be read to state or imply that an attorney may not be held responsible for his negligent draftsmanship whenever the client can or does read the document. Indeed, *where the document requires substantive or procedural knowledge is ambiguous, or is of uncertain application* the attorney may well be liable for negligence, notwithstanding the fact that his client read what he drafted. *This holding is simply that when the documents' meaning is plain, obvious, and requires no legal explanation, and the client is well educated ... and has had the opportunity to read what he signed, no action for professional malpractice based on counsel's alleged misrepresentation of the document will lie.*

*Id.* at 854–55, 227 S.E.2d 802 (emphasis added).

The *Berman* decision was interpreted by the Georgia Court of Appeals in *Kushner v. McLarty*, 165 Ga.App. 400, 300 S.E.2d 531 (1983). In *Kushner,* the plaintiff doctor sued his attorney for negligently drafting the doctor's employment agreement with his employer hospital. The doctor had wanted a provision in the contract giving him certain rights upon his termination from the hospital. When his contract expired, however, the hospital decided not to "renew" it and did not comply with certain provisions of the contract relating to "termination." In a separate suit, the Georgia Court of Appeals ruled that the hospital acted properly under the contract because of the difference between "termination" of the contract and "non-renewal" of the contract. *Kushner v. Southern Adventist Health & System,* 151 Ga.App. 425, 260 S.E.2d 381 (1979). The doctor then sued his attorney claiming that the contract was negligently drafted. The lower court granted the attorney's motion for a directed verdict citing the *Berman* decision as the basis for its holding. The Appellate Court reversed finding that the *Berman* holding was a limited one and that it involved one "of those rare cases in which the questions of negligence and proximate cause could be removed from the jury." *Kushner,* 165 Ga.App. at 402, 300 S.E.2d 531. The Court then stated the following:

Unlike *Berman involving the use of non-technical words to effectuate a clearly undesired financial consequence,* the evidence in the instant case shows that the construction and legal effect of the contractual provision in question may have posed to appellant a *legal technicality* that he was unequipped to appreciate as a non-lawyer ... reasonable minds could disagree as to whether paragraph 11 of the document ... did require a legal knowledge or explanation to become clear to a layman even to the well educated appellant. *Id.* at 403, 300 S.E.2d 531 (emphasis added).

■ The issue before the Court is whether the plaintiff understood the substance and the consequences of the documents he signed so as to relieve Mr. Gornall of any liability for the drafting of those documents. There is overwhelming evidence in the record to indicate that the plaintiff understood the meaning of every document he signed. *See* Tr. at 137–145, Feb. 6, 1985.[23] Furthermore, it is undisputed that the plaintiff is a well educated businessman with previous banking experience. And, the documents in question did not involve legal technicalities that were unfamiliar to the plaintiff. Although it is a close question, this Court finds that no reasonable jury could have concluded that the plaintiff did not understand the documents he signed and therefore Mr. Gornall cannot be responsible for any injuries sustained as a result of those documents.

### D. *Proximate Cause*

Even if this Court were to conclude that the plaintiff did not understand the documents he signed, there is absolutely no evidence in the record to indicate that the plaintiff was injured by the execution of those documents. There is no evidence that the promissory notes were even called in; that a default was ever declared; or that the voting control of the company ever shifted. There is also no evidence that links the execution of these documents to the business failure of De La Maria, Inc.

The plaintiff has simply failed to show that any of his injuries were proximately caused by his signing of these documents.

■ In sum, this Court finds that a reasonable jury could conclude that the defendants negligently drafted the documents complained of by the plaintiff. The jury could not reasonably conclude, however, that the plaintiff did not understand these documents before he signed them. Furthermore, there is no evidence in the record to indicate that the plaintiff's alleged injuries were proximately caused by the execution of those documents. Because the plaintiff understood all of the documents that he signed and because there is no evidence that those documents caused the plaintiff any damage, this Court must hold that the jury verdict cannot be sustained on the basis of the plaintiff's claim that the defendants negligently drafted the corporate documents of De La Maria, Inc.

### VI. CONFLICT OF INTEREST

■ The plaintiff argues that Mr. Gornall should have withdrawn from representing him in his business transactions with Mr. Hayes because of a conflict of interest. The plaintiff has, with two exceptions, failed to point to any actions on the part of Mr. Gornall which are traceable to this conflict of interest. The plaintiff does argue that Mr. Gornall's negligent drafting of the corporate documents was due to his conflict of interest. This Court has found, however, that these documents did not proximately cause any of the plaintiff's injuries. The plaintiff also contends that Mr. Gornall acted negligently during the May 1, 1981 directors' meeting where the plaintiff was "terminated." This contention will be discussed in the next section of this Order. With the exception of these two allegations, the plaintiff has failed to demonstrate how Mr. Gornall's alleged conflict of interest manifested itself to the detri-

**23.** In fact, the plaintiff testified that he asked Mr. Hayes if he would go through with the deal if the proxy was not signed and Mr. Hayes said

ment of De La Maria, Inc., or the plaintiff.[24]

## VII.  THE MAY 1 MEETING

The plaintiff claims that he was fired during the May 1, 1981, directors' meeting and that he also lost access to the company's assets on that day.  The defendants dispute this contention arguing that Mr. Hayes simply informed the plaintiff that his salary would no longer be funded by additional loans to the corporation.  Regardless of how the events of May 1 are characterized, however, it is clear that De La Maria, Inc., stopped doing business on that day.

The plaintiff argues that Mr. Gornall failed to render to him proper legal advice when the plaintiff was informed that he would not receive either his past due salary or any further salary from the corporation. The plaintiff testified at trial that Mr. Gornall told him during the meeting that there was nothing he could do about Mr. Hayes' actions.  Tr. at 130–132, Feb. 5, 1985.  The plaintiff's expert testified that the rendering of this statement constituted malpractice because the plaintiff actually had substantial rights under the corporate documents.  Tr. at 49–51, Feb. 11, 1985.  This Court finds that this evidence would support a finding that Mr. Gornall breached his duties to the plaintiff during the May 1, 1981 meeting.

The plaintiff does not dispute that Mr. Gornall told him during the May 1 meeting that he could no longer represent him and that the plaintiff should find another lawyer.[25]  It is also undisputed that the plaintiff retained another lawyer shortly after the May 1, 1981 meeting.  There is not a

scintilla of evidence in the record that indicates that the plaintiff gave up any rights between the May 1 meeting and his hiring of new counsel.  Without such evidence, no reasonable jury could conclude that the plaintiff was harmed by Mr. Gornall's failure to properly advise him of his rights during the May 1 meeting.

The plaintiff has also failed to present evidence to the jury to indicate what kind of or the amount of monetary damages he suffered as a result of Mr. Gornall's failure to properly advise him of his rights during the May 1 meeting.[26]  Apart from broad generalizations concerning the plaintiff's alleged rights under the corporate documents, there is no testimony in the record the jury could have reasonably used to award the plaintiff actual damages.  As noted earlier, the plaintiff admits in his brief that the issues surrounding the corporation's liability to the plaintiff were not before this court.  *See* p. 1514, *supra.*

In sum, this Court finds that a reasonable jury could conclude that Mr. Gornall acted improperly during the May 1, 1981 directors' meeting.  The plaintiff, however, has presented no evidence to indicate that this improper behavior harmed him in any way.  Absent such evidence, the jury's verdict cannot be sustained on the basis of Mr. Gornall's failure to give the plaintiff proper legal advice during the May 1 meeting.

## VIII.  CONCLUSION

At the beginning of this Order, this Court recognized the well established rule that a jury's verdict should not be overturned unless "the facts and inferences point so strongly and overwhelmingly in

no. Tr. at 140–145, Feb. 6, 1985.  The plaintiff also discussed the proxy with Mr. Gornall.  *Id.*

**24.**  To the extent that the plaintiff alleges that Mr. Gornall's conflict of interest was responsible for his not disclosing to the plaintiff Mr. Hayes' litigation history, this Court has already held that this nondisclosure was not the proximate cause of any of the plaintiff's injuries.  *See* Section IV, *supra.*

**25.**  Mr. Gornall promised to recommend another lawyer to the plaintiff but never did so.  The

plaintiff does not and could not, argue that this failure caused any damage.

**26.**  The plaintiff pointed to a legal bill paid by the corporation to the defendants subsequent to the May 1 meeting as evidence of his damages. Although this Court feels that the payment of this bill was improper in light of all of the circumstances, the plaintiff has not demonstrated that such payment was causally related to any injuries he suffered as a result of the business failure of De La Maria, Inc., or any other alleged injuries.

favor of one party ... that reasonable men could not arrive at a contrary verdict...." *Boeing v. Shipman,* 411 F.2d 365 (5th Cir. 1969, *en banc*). A review of all of the evidence in this case convinces this Court that reasonable men could not arrive at the conclusion that any of the defendants' acts or omissions proximately caused the plaintiff's injuries.

The plaintiff in this case, an educated and intelligent businessman, wanted to start a jewelry business in the United States. To achieve that end, he hired an attorney, Mr. Gornall, to find him a business associate and to draft the appropriate documents. Mr. Gornall recommended Mr. John E. Hayes to the plaintiff and the two men decided to form a business. At the time of that recommendation, Mr. Hayes was a named defendant in numerous lawsuits in California. Assuming that Mr. Gornall's recommendation of Mr. Hayes constituted legal malpractice, there is no evidence in the record to indicate that Mr. Hayes was responsible for any of the injuries the plaintiff allegedly suffered.[27] Mr. Hayes invested all of the money that he was legally obligated to invest. Furthermore, assuming that the defendants negligently drafted the corporate documents, the evidence is unequivocal that the plaintiff fully understood those documents and that, in any event, the drafting of those documents played no role in the demise of De La Maria, Inc. The plaintiff contended that Mr. Gornall's representation of him was improper due to a conflict of interest but did not show how he or his business was harmed by that conflict. Finally, assuming that Mr. Gornall improperly told the plaintiff that he had no rights after Mr. Hayes decided not to fund the plaintiff's past due or future salary, there is no evidence in the record that establishes how the plaintiff was harmed by the improper rendering of such advice. Simply stated,

the plaintiff did not present evidence to the jury to support a finding that Mr. John Gornall or Powell, Goldstein took any action, or failed to take any action, that in any way contributed to the plaintiff's failure to sell his jewelry at a profit or any of his other alleged damages. Absent such evidence, the jury's verdict cannot be sustained.[28]

In sum, the defendants' motion for a judgment notwithstanding the verdict pursuant to Fed.R.Civ.Pro. 50(b) is GRANTED. The defendants' motion for a new trial is DENIED as moot. The plaintiff's motion for costs is DENIED.

---

**27.** This Court is not holding that Mr. Hayes' actions in relation to De La Maria, Inc., were proper or legal. Based on the record before it, however, this Court concludes that the plaintiff has not demonstrated that *his personal injuries,* if any, were caused by any of the defendants or by Mr. Hayes.

**28.** Because of this holding, this Court need not discuss the defendants' arguments that this Court's instructions on punitive damages were in error or that the Court wrongfully decided to strike part of defendants' exhibit 114 at the close of the evidence.