## 64727. KUSHNER v. McLARTY et al.

CARLEY, Judge.

The instant appeal arises from a legal malpractice action brought by appellant Kushner, a medical doctor, against the appellees, his former attorney, McLarty, and the law firm of McLarty & Aiken.

Appellant was a general partner in the investment group that developed Smyrna Hospital and was also employed as the hospital's radiologist. An opportunity arose to sell the hospital facility and appellant consulted with McLarty regarding preparation of an employment contract between himself and the prospective purchasers of the hospital. As appellant was in a position to control whether the hospital would be sold, he told McLarty that his decision to sell depended upon his obtaining a favorable long-term contract with the new owners that would ensure his retention as the hospital's radiologist. Under the contract appellant envisioned, the hospital could not refuse to renew his contract *or* terminate his services unless three conditions were first satisfied: He was given 120 days notice; a determination was made by the medical-dental staff that his services as a radiologist were inadequate; and, he was afforded a hearing.

Appellant furnished McLarty a copy of his employment agreement with the then-existing hospital ownership to use as a model. The critical portions of the agreement McLarty prepared for appellant were contained in paragraph 11 of the new employment contract, the language of which appears in *Kushner v. Southern Adventist Health &c. System,* 151 Ga. App. 425 (260 SE2d 381) (1979). The first subparagraph of paragraph 11 of the agreement drafted by McLarty was almost identical to language appearing in appellant's original employment contract. The second subparagraph was added by McLarty as a result of his consultation with appellant.

The hospital was sold and on January 1, 1976, appellant and the new owner executed the agreement prepared by McLarty. The initial term under the agreement ran through December 31, 1978. On August 21, 1978, the hospital gave appellant notice that it would not renew the agreement and that appellant's employment would terminate as of December 31, 1978.

Appellant then sued the hospital for breach of contract, asserting that the agreement did not permit the hospital to refuse renewal on a mere 120-day notice, but also required both a determination as to his competence by the medical-dental staff and a hearing. The trial court granted summary judgment in favor of the hospital and this court affirmed. *Kushner,* 151 Ga. App. 425, supra. On appeal, paragraph 11 was held to be comprised of two distinct

subparagraphs, the first of which set forth "a simple notice requirement for *nonrenewal* of the contract" and the second providing "a more elaborate procedure where the contract is to be *terminated 'during'* a three-year period." (Emphasis supplied.) *Kushner,* 151 Ga. App. at 426, supra. Thus, the hospital's nonrenewal at the end of the three year term was permissible upon the mere giving of a 120-day notice. This court rejected the construction of the contract urged by appellant — that the procedure described in subparagraph 2 for terminations applied equally to nonrenewal at the end of a three-year term — as "arguably creative" but "unreasonable and unnatural." *Kushner,* 151 Ga. App. at 427, supra. The language of the contract was deemed unambiguous and capable of only one reasonable construction, which was that adopted by the court. *Kushner,* 151 Ga. App. at 427, supra.

Appellant subsequently filed the instant action against appellees, alleging negligence in preparing the contract and in advising appellant upon its meaning. The complaint also alleged a breach of warranty by appellees that the agreement would meet appellant's specifications. The case came on for trial and the trial court granted appellees' motion for a directed verdict made at the close of appellant's case. Appellant appeals.

1. "The nature of law and the practice of law is such that counsel should be more careful and precise in the matter of semantics. The meaning and effect of a will, a contract or a pleading is to be ascertained and determined by the language employed in its preparation. It is the lawyer's responsibility to his client to select and employ words in the construction of these documents that will accurately convey the meaning intended." *McIntyre v. Zac-Lac Paint &c. Corp.,* 107 Ga. App. 807, 808 (131 SE2d 640) (1963). "Although he is not an insurer of the documents he drafts, the attorney may breach his duty towards his client when, after undertaking to accomplish a specific result, . . . he then fails to comply with prescribed statutory formalities or to effectuate the intent of the parties. [Cits.]" *Berman v. Rubin,* 138 Ga. App. 849, 852 (227 SE2d 802) (1976).

In directing a verdict in favor of appellees in the instant case, the trial court relied upon the ultimate holding in *Berman,* supra, at 854: "Although it would otherwise be a jury question as to whether or not defendant Rubin had breached his duty towards Dr. Berman ([cit.]), we do not reach that issue in this case. The record affirmatively shows that Rubin's actions were not the cause of the alleged injury to appellant Berman. The agreement in this case is not ambiguous, nor is it technical or laced with 'legal jargon.' Appellant Berman admits that an initial draft of the agreement was unsatisfactory to him, that the draft was changed, that he read the changes, that he initialed each

and every page, and that he placed his signature on the final page. There are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby. [Cits.] This rule has particular force when the party is well educated and laboring under no disabilities. To hold otherwise is to create the potential for malpractice litigation in every contract dispute."

*Berman* itself recognized however, that its holding was a limited one and that the court's "decision should not be read to state or imply that an attorney may not be held responsible for his negligent draftsmanship whenever the client can or does read the document. Indeed, where the document requires substantive or procedural knowledge, is ambiguous, or is of uncertain application, the attorney may well be liable for negligence, notwithstanding the fact that his client read what was drafted. This holding [in *Berman*] is simply that when the document's meaning is plain, obvious, and requires no legal explanation, and the client is well educated, laboring under no disability, and has had the opportunity to read what he signed, no action for professional malpractice based on counsel's alleged misrepresentation of the document will lie." *Berman,* 138 Ga. App. at 854, supra. See also *McWhorter, Ltd. v. Irvin,* 154 Ga. App. 89 (267 SE2d 630) (1980).

In the instant case, the contract drafted by McLarty for appellant has already been determined to be unambiguous. *Kushner,* 151 Ga. App. 425, supra. However, this legal determination does not, standing alone, authorize the grant of a directed verdict to appellees under what we perceive to be the narrow holding in *Berman.* As *Berman* was explained and exemplified in *McWhorter, Ltd.,* 154 Ga. App. 89, supra, that decision was perhaps among those rare cases in which the questions of negligence and proximate cause could be removed from the jury. However, the meaning and legal effect of the disputed portions of the agreement in the instant case are not so obvious as in *Berman.* What was alleged to be negligent draftsmanship in *Berman* was the clear and unambiguous employment of non-technical semantics to effectuate an excessive financial consequence which should have been obvious to a well educated layman upon reading. In contrast, the professional decision in the instant case to separate the contractual terms relating to renewal/nonrenewal and termination into distinct subparagraphs was ultimately one having entirely legal, rather than purely financial, significance and consequences, which were not merely in excess of but directly contrary to appellant's expressed intent. As noted in *Kushner,* 151 Ga. App. 425, supra, the words "nonrenewal" and "termination" were not interchangeable in *legal* effect. That appellant should have realized that paragraph 11, as drafted by

McLarty, did not carry the legal meaning he intended that it convey but, instead, imparted something very different is not the only reasonable conclusion that could be reached based on the evidence. Appellant testified that he read paragraph 11 in its final form and that he did not understand it but that he did understand what McLarty told him it meant. He testified that even after the hospital gave him notice of nonrenewal, McLarty assured him that the agreement said what he had intended, and that McLarty has continued in this position. Apparently, despite this Court's holding in *Kushner,* 151 Ga. App. 425, supra, McLarty, in his testimony, confirmed that he still believes that paragraph 11 means that the hospital could not deny renewal of the agreement without cause, as outlined in the second subparagraph.

Unlike *Berman,* involving the use of non-technical words to effectuate a clearly undesired financial consequence, the evidence in the instant case shows that the construction and legal effect of the contractual provision in question may have posed to appellant a legal technicality that he was unequipped to appreciate as a non-lawyer. This would be particularly true if appellant was, as he asserts, incorrectly advised as to its legal meaning and effect. Reasonable minds could disagree as to whether paragraph 11 of the document in the instant case did require a legal knowledge or explanation to become clear to a layman, even to the well educated appellant, and whether the attorney's draftsmanship and incorrect legal advice as to the effect of that paragraph constituted the proximate cause of appellant's injury. *McWhorter, Ltd.,* 154 Ga. App. 89, supra. As these were factual questions proper for jury resolution, we cannot hold as a matter of law, that the appellant's failure to detect the legal defects in McLarty's draftsmanship was the proximate cause of his injury. The trial court erred in directing a verdict as to appellant's legal malpractice claim.

2. It was not, however, error to direct a verdict for appellees as to the breach of warranty claim. To recover for an express warranty it is necessary to show that the statement was intended to be an express warranty and that it was relied upon as such. *Bel v. Adler,* 63 Ga. App. 473, 477 (11 SE2d 495) (1940). "[M]ere words of recommendation are not sufficient to constitute such a warranty." *Postell v. Boykin Tool &c. Co.,* 86 Ga. App., 400, 402 (2) (71 SE2d 783) (1952). Our review of the transcript demonstrates that appellant's evidence shows, at most, words of recommendation, not an enforceable contract of express warranty. See generally *Taratus v. Smith,* 245 Ga. 107 (263 SE2d 145) (1980).

*Judgment affirmed in part and reversed in part. Shulman, C. J., and Quillian, P. J., concur.*

DECIDED JANUARY 18, 1983 —
REHEARING DENIED FEBRUARY 10, 1983 —

*V. C. Baker,* for appellant.
*Paul M. Hawkins, Michael Goldman,* for appellees.