A90A1864. LITTLE v. MIDDLETON et al.
(401 SE2d 751)

CARLEY, Judge.

Appellee-defendants entered into a written agreement to provide legal representation to appellant-plaintiff "for the purpose of investigation and bringing suit against BETTY GIVENS CHAPMAN for certain damages and injuries sustained by [appellant] on July 2, 1986 as a result of BETTY GIVENS CHAPMAN running into the rear of the automobile . . . in which [appellant] was a passenger. . . ." Eventually, appellant agreed to settle her tort claim for the full $25,000 policy limits of Chapman's automobile liability insurance coverage and, in connection with this settlement, she signed a written release of "Susan Y. Chapman and Betty Chapman, their heirs, executors, administrators, agents and assigns, *and all other persons, firms or corporations liable or who might be claimed to be liable,* . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which

occurred on or about the 2nd day of July, 1986 at or near [a stated location. Appellant] hereby declares that the terms of this settlement and the foregoing notice have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident." (Emphasis supplied.)

When appellant's own insurer thereafter based its refusal to pay her claim for uninsured motorist (UM) benefits upon her execution of the release, she brought this legal malpractice action against appellees. Appellant's complaint alleged, in material part, that appellees' "acts and omissions . . . in failing to obtain and review [her] own automobile insurance policy, . . . to inform and advise [her] of the potential effect of the general release upon her anticipated claims for UM benefits, . . . to file suit and obtain a judgment, . . . to obtain the consent of the UM insurance carriers to any settlement, and . . . to preserve [her] ability to properly present her UM claim, all constituted the performance of legal services in a manner far below the standard of skill, care and diligence normally possessed and utilized by other attorneys who represent clients in personal injury cases under the same or similar circumstances."

After discovery, cross-motions for summary judgment were filed. The trial court granted summary judgment in favor of appellees and denied appellant's motion. Appellant appeals from the trial court's order on the cross-motions for summary judgment.

1. The trial court did not indicate the reason for its grant of summary judgment in favor of appellees. However, appellees' motion relied exclusively upon the holding of *Berman v. Rubin*, 138 Ga. App. 849, 855 (227 SE2d 802) (1976): "[W]hen the document's meaning is plain, obvious, and requires no legal explanation, and the client is well educated, laboring under no disability, and has had the opportunity to read what he signed, no action for professional malpractice based on counsel's alleged misrepresentation of the document will lie." Appellant urges that *Berman* is distinguishable and that reliance upon its holding in granting summary judgment in favor of appellees was, therefore, erroneous.

The decision in *Berman* assumed the attorney's negligence but nevertheless held that there could be no recovery since the client must read what he signs and becomes bound thereby. However, "*Berman* itself recognized . . . that its holding was a limited one and that the court's 'decision should not be read to state or imply that an attorney may not be held responsible for his negligent draftsmanship whenever the client can or does read the document. Indeed, where the

document requires substantive or procedural knowledge, is ambiguous, or is of uncertain application, the attorney may well be liable for negligence, notwithstanding the fact that his client read what was drafted. . . .' [Cits.] . . . As *Berman* was explained and exemplified in *McWhorter, Ltd. [v. Irvin]*, 154 Ga. App. 89 [(267 SE2d 630) (1980)], that decision was perhaps among those rare cases in which the questions of negligence and proximate cause could be removed from the jury." *Kushner v. McLarty*, 165 Ga. App. 400, 402 (1) (300 SE2d 531) (1983). Accordingly, the issue to be decided is whether, assuming appellees' negligence, "the meaning and legal effect of the disputed portions of the agreement in the instant case are[, as a matter of law, as] . . . obvious as in *Berman*." *Kushner v. McLarty*, supra at 402 (1).

The attorney's alleged negligence in *Berman* related only to a *factual* issue. Despite the fact that the agreement that the client read and signed clearly and unambiguously provided that he had a specific financial obligation to *each* of his children *and* to his wife, he maintained that the extent of his financial obligations had been misrepresented to him by his attorney. Unlike *Berman*, the alleged negligence attributed to appellees in the instant case does *not* relate so much to a factual issue as it does to the *legal effect* of the release that appellant signed. Appellant maintains that appellees were negligent in their representation because the release inured to the benefit of her UM carrier. There are perhaps few areas of Georgia law in which legal expertise and precision are more crucial than in the negotiation and execution of releases. See generally *Posey v. Medical Center-West*, 257 Ga. 55 (354 SE2d 417) (1987); *Williams v. Physicians &c. Hosp.*, 249 Ga. 588 (292 SE2d 705) (1982). Unlike the agreement in *Berman*, the document that was signed by appellant did not *specify* the release of her UM carrier and, if it does serve to release that otherwise unnamed carrier, it is solely because of the legal effect of the *general* wording that was employed therein. Under these circumstances, it cannot be said that, as a matter of law, the legal effect of the release did not pose "to appellant a legal technicality that [she] was unequipped to appreciate as a non-lawyer." *Kushner v. McLarty*, supra at 403 (1). "Reasonable minds could disagree as to whether [the release] in the instant case did require a legal knowledge or explanation to become clear to a layman . . . and whether the attorney's [failure to inform appellant fully] as to the [purported] effect of [the release] constituted the proximate cause of appellant's injury. [Cit.] As these were factual questions proper for jury resolution, we cannot hold as a matter of law, that the appellant's failure to detect the [purported] legal defects in [the release] was the proximate cause of [her] injury." *Kushner v. McLarty*, supra at 403 (1). Compare *De La Maria v. Powell, Goldstein, Frazer & Murphy*, 612 FSupp. 1507, 1517-1518 (N.D.

Ga. 1985).

2. Appellees' further contention that their motion for summary judgment was properly granted because, pursuant to the terms of the retainer agreement, they undertook to represent appellant only as to her claim against Chapman and not as to her claim for UM benefits is without merit. Appellees contracted to investigate and to bring suit against Chapman. Appellant's own UM coverage was a potential source of satisfaction of any recovery by her against Chapman. A determination of the potential sources of satisfaction in a given case may require, and indeed often does require, the professional services of an attorney. A layman, even though aware of his tort remedy, may not have the requisite legal knowledge as to his contractual rights and thus may be unable to appreciate the full range of the possible adverse consequences of executing a general settlement agreement with the tortfeasor. In the instant case, appellant's expert has averred that the applicable standard of care required that appellees inquire into and then pursue alternate sources of satisfaction of appellant's potential recovery against Chapman, specifically appellant's entitlement to UM benefits, and that appellees' failure to do so was legal malpractice. The essence of appellees' contention is that the terms of their retainer agreement relieve them from liability for that alleged negligence. An attorney may not relieve himself by contract of the duty to exercise reasonable care and an attempt to do so is void as against public policy. See *Emory Univ. v. Porubiansky*, 248 Ga. 391, 394 (282 SE2d 903) (1981).

3. As previously noted, "[r]easonable minds could disagree as to whether [the release] in the instant case did require a legal knowledge or explanation to become clear to a layman . . . and whether the attorney's [failure to inform appellant fully] as to the effect of [the release] constituted the proximate cause of appellant's injury. [Cit.]" *Kushner v. McLarty*, supra at 403 (1). It follows that the trial court erroneously granted summary judgment in favor of appellees but correctly denied appellant's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED JANUARY 14, 1991 —
REHEARING DENIED JANUARY 31, 1991 — 

*Jones, Brown & Brennan, Taylor W. Jones, Myles E. Eastwood, David N. Lefkowitz*, for appellant.

*Arnall, Golden & Gregory, Karen B. Bragman, Jeffrey M. Smith, Frank N. White*, for appellees.