Bruce WINSTON, Plaintiff,

v.

Francis B. BROGAN and English,
McCaughan & O'Bryan, P.A.,
Defendants.

No. 91–6384–CIV.

United States District Court,
S.D. Florida.

Jan. 27, 1994.

Edward A. Moss, Anderson, Moss, Parks & Sherouse, P.A., Mark Hicks, Hicks, Anderson & Blum, P.A., Miami, FL, for plaintiff.

Andrew Seiden, Stephens, Lynn, Klein & McNicholas, P.A., West Palm Beach, FL, for defendants.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon the defendants' Motion for Summary Judgment. The motion has been fully briefed and is now ripe for ruling.

### Facts

The plaintiff, Bruce Winston, and his brother, Ronald Winston, are the only children of Harry and Edna Vivian Winston. Harry Winston died on December 8, 1978. His will created a marital trust, which provided for payment of income from the trust to the benefit of Edna Vivian Winston during her life, and granted Mrs. Winston the power to appoint the principal of the trust by her will.

The will also provided that, upon Mrs. Winston's death, a second trust would be created for the benefit of Bruce Winston. This trust would consist of one-half the principal of the marital trust as to which Mrs. Winston had not exercised her power of appointment. The other half of such principal was to be distributed outright to Ronald Winston.

The income from the trust created for Bruce Winston was to be paid to Bruce dur-

ing his life, and the principal was to be paid to Bruce in five installments payable on the 5th, 10th, 15th, 20th and 25th anniversaries of Edna's death. In the event that Bruce died without issue before receiving all such principal, the remainder was to be distributed to Ronald Winston.

Apparently, Harry Winston contemplated the possible adverse tax consequences to Edna's estate should she survive him and should the marital trust be created. Consequently, the will provided that if Edna did not exercise her power of appointment and the unappointed principal was included in her taxable estate, the taxes and administrative expenses attributable to the marital trust were to be paid from the marital trust assets.

Edna Winston was unable to exercise her power of appointment, because she suffered from organic brain syndrome (cortical and subcortical degenerative process). Due to her illness, just five months after her husband's death a petition for conservatorship of Edna Winston's property was filed in New York. She was declared incompetent by the New York court, and her two sons (Bruce and Ronald) were appointed conservators. Four months later, Edna's residence was moved to Florida and Florida guardianship proceedings were instituted. On November 13, 1979, the Broward County Circuit Court entered an order appointing Bruce and Ronald as guardians of the person and property of their mother.

The defendants were employed by Bruce and Ronald Winston in 1981 as part of a team of lawyers for the purposes of estate and tax planning for the estate of Edna Vivian Winston. At that time, Edna Winston's assets were valued at approximately $6,000,000, the majority of which were liquid investment assets. Her last known will was executed on July 10, 1928; it provides for outright distribution of her estate in equal shares to her two sons. Defendant Brogan recognized that Edna's move to Florida created a tax problem because, despite the provisions in Harry's will, Florida law would require that all taxes and administrative expenses attributable to the marital trust be taxed to Edna's estate. Due to the substantial value of the marital trust ($60 to $70

million), estate taxes and administrative expenses would have equalled or exceeded the liquid investment assets in Edna's estate.

The team of lawyers considered several alternative solutions to this problem. In addition to preserving the liquid assets, the solutions considered would also achieve certain income tax savings. One of the alternatives considered was to transfer Edna Winston's investment assets to the marital trust. Another was to exercise the power of appointment granted by the marital trust through a codicil to Edna's will executed by her guardians with court approval. The proposed codicil would direct that estate taxes and administrative expenses be paid from the assets of the marital trust.

On August 18, 1982, lawyers for the New York conservatorship prepared and filed a petition in the New York court for permission to make a revocable transfer of Edna's investment assets to the marital trust. Bruce was informed that the transfer would not adversely affect his rights to the investment assets as a beneficiary of Edna's will. Consequently, he verified the petition, which stated in pertinent part:

> Thus, in effect, Harry Winston, Inc. will be paying the estate's expenses from its assets. By permitting the proposed revocable transfer, the conservatee's investment assets can, after her death, be distributed to the beneficiaries of her estate (her sons) and will not be required to bear their proportionate share of the above-described expenses of conservatee's estate (thereby preserving liquidity for her beneficiaries and preventing an unnecessary and perhaps, a distress sale of her investment assets to pay a part of the expenses of her estate).

It further provided that "the revocable transfer is being proposed in order to maximize estate planning and income tax benefits for the conservatee, her estate and her beneficiaries."

The New York court granted the petition, stating that "[t]he Court has assured itself that ... such transfer would not cause any individual who was a beneficiary under Mrs. Winston's will to be deprived of his or her

legacy." On March 7, 1983, the New York lawyers wrote Bruce and Ronald a letter enclosing a copy of the New York court's order. The letter stated:

> As you know, this transfer is intended to insure that all of your mother's cash and investment assets can be transferred to you at the time of her death rather than having to use some of them to pay a portion of the administrative expenses and taxes in your mother's estate.

Bruce was later informed that it was necessary to obtain authorization from the Florida court for the transfer. The defendants sent him a verification to sign through his brother, Ronald. Believing that the petition would not affect his rights under Edna's will, Bruce signed the verification. The Florida petition assured the court that Edna's investment assets would be distributed at her death in accordance with her will. Specifically, it stated:

> ... the Will of the Incompetent lists her two children, the Petitioners, as the sole beneficiaries of her estate. This is identical to the provisions of the trust to which her assets are proposed to be transferred, and thus both instruments contain the same testamentary provisions.

On April 5, 1983, the court in Florida entered an order authorizing the transfer of assets.

On November 1, 1983, the defendants sought authorization from the Florida guardianship court for Bruce and Ronald to exercise Edna's power of appointment on her behalf by executing a codicil to her will. The petition explained that this step was necessary to preserve Edna's testamentary intent that her two sons receive their shares of her estate outright and free of trust. Specifically, it stated in pertinent part:

> ... Unless the Petitioners are authorized to exercise the power of appointment under the marital trust created by the Incompetent's deceased husband (father of the Petitioners), the Incompetent's testamentary plan will be largely defeated.

> \*   \*   \*   \*   \*   \*

As indicated above, the Incompetent's will evidences her desire that her two sons receive outright, and free of trust, their share of her estate except for the jewelry.... [I]f the power of appointment is not exercised as proposed herein, a significant portion of the Incompetent's probate estate will be liquidated to pay the estate taxes and administrative expenses which will defeat the Incompetent's desire that her son Bruce Winston receive his share of her estate free of trust.

The Florida court granted this petition and a codicil to Edna's will was executed directing that all estate taxes and administrative expenses be paid from the assets of the marital trust. Nevertheless, the transfer of assets was never revoked.

After his mother died, Bruce Winston learned for the first time that he would not receive his share of his mother's investment assets outright, as provided in his mother's will. Due to the transfer, these assets became subject to the terms of the marital trust, and would therefore be distributed to him in installments on the 5th, 10th, 15th, 20th and 25th anniversaries of his mother's death. Consequently, he filed this lawsuit against the defendants, the attorneys who advised him during the time when these actions were taken.

## Discussion

In his complaint, Bruce Winston alleges that the defendants' failure to advise him of the consequences of the transfer of assets, as well as their failure to revoke the transfer after execution of the codicil, constitutes negligence which caused him to suffer damages. Specifically, he was denied the right to receive the outright distribution of his mother's investment assets as provided in his mother's will.

The defendants offer three main arguments in support of their motion for summary judgment. They assert that: (1) the plaintiff lacks the privity necessary to maintain the claims asserted against them, and that they therefore owed no duty to the plaintiff; (2) the plaintiff will be unable to prove that his damages are the result of their alleged negligence; and (3) the plaintiff is estopped from objecting to the impropriety of the defendants' actions, because he execut-

ed various petitions and pleadings which the defendants prepared.

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing that there is no genuine issue of material fact lies upon the moving party and it is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ Under Florida law, to maintain a legal malpractice suit the plaintiff is required to prove (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff. *Maillard v. Dowdell*, 528 So.2d 512 (Fla.Dist.Ct.App.3d Dist.1988); *Ginsberg v. Chastain*, 501 So.2d 27 (Fla.Dist.Ct.App.3d Dist.1986); *Lorraine v. Grover, Ciment, Weinstein & Stauber, P.A.*, 467 So.2d 315 (Fla.Dist.Ct.App.3d Dist.1985). Florida courts have uniformly limited attorneys' liability for negligence in the performance of their professional duties to clients with whom they share privity of contract. *Angel, Cohen & Rogovin v. Oberon Invest., N.V.*, 512 So.2d 192, 194 (Fla.1987). However, this rule of privity has been relaxed where it was the apparent intent of the client to benefit a third party. *Id.*, at 194. Although the court in *Oberon* recognized that the most obvious example of this exception is in the area of will drafting, the third party intended beneficiary exception to the rule of privity is not limited to will drafting cases. *Greenberg v. Mahoney Adams & Criser, P.A.*, 614 So.2d 604, 605 (Fla.Dist.Ct.App. 1st Dist.1993).

■ The plaintiff argues that this case falls within the third party intended beneficiary exception to the privity requirement. At the very least, he argues, whether or not he was an intended third party beneficiary of the defendants' professional services is a disputed question of fact. The Court agrees. Although the defendants were retained by Bruce and Ronald Winston as guardians of Edna Vivian Winston, the facts as stated by the defendants as well as the plaintiff suggest that the defendants were hired to effectuate estate planning for the benefit of Edna Winston's will beneficiaries, her two sons. Thus, it would not be unreasonable to conclude that Bruce Winston personally, as one of only two beneficiaries of his mother's will, was an intended third party beneficiary of the defendants' professional services.

The defendants argue that Bruce Winston could not be an intended third party beneficiary of the defendants' services, because potential conflicts of interest existed between the plaintiff as a guardian of Edna V. Winston and the plaintiff as a beneficiary of Edna V. Winston's will. They rely on *Oberon*, 512 So.2d 192, in support of this assertion. However, their reliance on *Oberon* is misplaced.

In *Oberon*, the Court stated that the plaintiff could not have been an intended third party beneficiary of the client, because there existed an obvious conflict of interest between the client and the plaintiff. *Oberon*, at 194. In the instant case, unlike *Oberon*, there was no apparent conflict of interest between Bruce Winston as a guardian of Edna V. Winston and Bruce Winston as a beneficiary of Edna V. Winston's will. As the evidence presented thus far suggests, the defendants recognized that their main goal when representing the guardians for the purpose of estate planning was to preserve Edna V. Winston's testamentary intent. The defendants have not suggested, nor have they offered any evidence demonstrating that Bruce Winston expressed any desire to take any action which conflicted with his mother's wishes.

The defendants argue that the instant dispute is proof that there was a conflict between the interests of the guardians acting

on behalf of Edna V. Winston and the potential beneficiaries of her estate. Apparently, the defendants fail to recognize the nature of the plaintiff's claim. Bruce Winston has not alleged in his complaint that the defendants should have placed his interests ahead of those of his mother. He alleges that his mother's testamentary intent was frustrated due to the defendants' negligence, and that he suffered as a result. Thus, there is no indication of a conflict of interest which would undermine Bruce Winston's argument that he was an intended third party beneficiary of the defendants' professional services. Whether the plaintiff was actually an intended third party beneficiary, and was therefore owed a duty, is an issue of fact to be resolved by the jury.

The defendants' second argument is that the plaintiff will be unable to prove that his damages are the result of their alleged negligence. According to the defendants, the plaintiff cannot prove that the results would have been different if they had acted differently, because numerous factors might have influenced the outcome. However, the effects that these factors would have had on the plaintiff's situation, and the various outcomes which might have resulted from alternative actions by the defendants, are likewise issues of fact which remain in dispute. The plaintiff has offered sufficient evidence, including the defendants' own records, to create a question of fact as to whether his damages resulted from the defendant's alleged negligence.

■ Finally, the defendants argue that the plaintiff is estopped from objecting to the impropriety of their actions, because he signed the documents prepared by the defendants, which indicated that he had read and understood the documents. In addition, the defendants assert that the plaintiff had a duty as a guardian to be fully informed of all actions taken on behalf of the ward. Accordingly, they also argue that the plaintiff is estopped from objecting to the impropriety of actions which he had a non-delegable duty to be informed of and not ignore. They cite the case of *Brent v. Smathers*, 547 So.2d 683 (Fla.Dist.Ct.App.3d Dist.1989) in support of their arguments.

However, their reliance on *Brent v. Smathers* is misplaced. In *Brent,* the Court held that a co-trustee, even though he was a lawyer, did not have a duty to explain the effects of transactions to a beneficiary/co-trustee who consented to the transactions unless an explanation was requested, or the co-trustee knew that the beneficiary/co-trustee did not have the necessary knowledge of the facts to understand the transactions. *Brent,* at 686. *See also, Dollman v. Shutts & Bowen,* 575 So.2d 320, 321 (Fla.Dist.Ct. App.3d Dist.1991) (explaining and distinguishing *Brent*). Unlike the defendant in *Brent,* the defendants in this case are not co-trustees or guardians; they are counsel retained by the guardians to provide guidance with regard to the transactions at issue.

■ As the Court in *Dollman* pointed out, counsel is often engaged because the client lacks the knowledge and skills necessary to understand the transactions he will undertake. *Dollman,* at 321. A client who, after receiving advice of counsel, signs a document acknowledging that he has read and understands it, should not necessarily be estopped from asserting that the advice he received from counsel was misleading. In this case, there remain questions of fact regarding the plaintiff's understanding of the transactions and the information he received from counsel. Moreover, the plaintiff is not merely alleging that the defendants' preparation and submission of certain petitions to the courts constituted negligence; he also alleges that he was damaged as a result of their failure to take other necessary actions. Questions of fact remain with regard to these allegations as well. Consequently, the Court will deny the defendants' motion for summary judgment.

Accordingly, having reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED and ADJUDGED** that the defendants' Motion for Summary Judgment is **DENIED.**

**DONE AND ORDERED.**