OPINION OF THE SUPREME COURT OF NEBRASKA

NOTICE: DUE TO UNFORESEEN CIRCUMSTANCES, THIS OPINION IS BEING POSTED TEMPORARILY IN "SLIP' OPINION FORM. IT WILL BE REPLACED AT A LATER DATE WITH AN "ADVANCE" OPINION, WHICH WILL INCLUDE A CITATION.

Case Title

BRENDA R. RICE, APPELLANT,
V.
TERRANCE A. POPPE, AN INDIVIDUAL, AND MORROW, POPPE, WATERMEIER &
LONOWSKI, P.C., A LIMITED LIABILITY ORGANIZATION, APPELLEES.

Case Caption

RICE V. POPPE

Filed April 28, 2016.    No. S-15-528.

Appeal from the District Court for Lancaster County: DANIEL E. BRYAN, JR., Judge. Reversed and remanded for further proceedings.

James R. Welsh and Christopher Welsh, of Welsh & Welsh, P.C., L.L.O., for appellant.

Randall L. Goyette and Colin A. Mues, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees.

RICE v. POPPE

Filed April 28, 2016.    No. S-15-528.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Issue Preclusion.** The applicability of claim and issue preclusion is a question of law.

4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the trial court.

5. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial.

6. ____: ____. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

7. **Malpractice: Attorney and Client: Proof: Negligence: Proximate Cause.** To succeed in a legal malpractice claim, a plaintiff must ultimately prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff.

8. **Attorney and Client.** Attorneys owe their clients the duty to exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.

9. **Attorney and Client: Compromise and Settlement.** Lawyers must advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks.

10. **Malpractice: Attorney and Client.** The general standard of an attorney's conduct is established by law, but whether an attorney's conduct fell below the standard in a particular case is a question of fact.

11. **Attorney and Client: Expert Witnesses.** Expert testimony is generally required to show whether an attorney's performance conformed to the standard of conduct.

12. **Malpractice: Attorney and Client: Expert Witnesses: Negligence.** Under the common-knowledge exception, expert testimony is not needed to show whether an attorney's performance conformed to the standard of conduct if the alleged negligence is within the comprehension of laypersons.

13. **Malpractice: Attorney and Client.** A client cannot recover in a legal malpractice case if the client's own conduct caused his or her injury.

14. ____: ____. In a legal malpractice claim, whether a client's failure to read or understand a disputed document is a superseding cause depends on the facts.

15. **Issue Preclusion: Judgments.** Issue preclusion applies if (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

## SUMMARY

In 2011, the district court dissolved the marriage of Brenda R. Rice and Dale E. Rice. Attorney Terrance A. Poppe represented Brenda in the dissolution action. Later, Dale died and Brenda made a claim for the death benefits under life insurance policies owned by Dale. The court determined that Brenda was not entitled to the benefits, because she waived her beneficiary interest under the property settlement agreement. Brenda sued Poppe for legal malpractice, alleging that he had failed to advise her that the property settlement agreement waived her beneficiary interest in Dale's life insurance policies. The trial court sustained Poppe's motion for summary judgment, reasoning that Poppe had no duty to advise Brenda of the legal effect of an unambiguous agreement. We conclude that Poppe, the summary judgment movant, did not establish a prima facie case entitling him to judgment as a matter of law. We therefore reverse the judgment and remand for further proceedings.

## BACKGROUND

In 2011, Brenda filed a complaint to dissolve her marriage to Dale. She retained Poppe to represent her.

Brenda and Dale ultimately signed a property settlement agreement drafted by Poppe. Brenda testified that before she signed the agreement, Dale told her that he was "'going to keep [her] on as [his] beneficiary'" for the life insurance policies he owned. Brenda testified that Poppe never asked about the parties' life insurance beneficiary designations. Nor did she discuss Dale's intentions with Poppe before he drafted the agreement.

In the agreement, Brenda and Dale divided the marital estate and waived whatever interest they had in certain property owned by the other spouse. Paragraph VI provided:

> **STOCKS, BANK ACCOUNTS, LIFE INSURANCE POLICICES** [sic]**, PENSION PLANS AND RETIREMENT PLANS**
>
> [Brenda] shall be awarded all interest in all pension plans, stocks, retirement accounts, 401(k), IRA, life insurance policy and checking or savings account in [Brenda's] name, free from any claim of [Dale]. [Dale] shall be awarded all interest in any pension plans, stocks, retirement accounts, 401(k), IRA, life insurance policy and checking or savings account in [Dale's] name, free from any claim of [Brenda].

Paragraph IX provided:

> **PROPERTY PROVISIONS AND SETTLEMENT OF PROPERTY RIGHTS OF PARTIES**
>
> It is expressly understood by and between the parties hereto that the provisions of this agreement relating to the property and liabilities of each, set aside and allocate to each party his or her respective portions of the properties belonging to the parties and of the liabilities of the parties at the date hereto; and each party acknowledges that the properties set aside to him or her, less the liabilities so allocated to him or her, will be in full, complete and final settlement, release and discharge, as between themselves, of all

rights, claims, interests and obligations of each party in and to the said properties and the same in their entirety constitute a full, fair and equitable division and the partition of their respective rights, claims and interests in and to the said properties of every kind and nature.

And, in relevant part, paragraph X provided:

### WAIVER AND RELEASE OF MARITAL RIGHTS

. . . .

(b) In consideration of the provisions of this agreement, [Brenda] waives and relinquishes any and all interest or rights of any kind, character, or nature whatsoever, including but not limited to all rights to elective share, homestead allowance, exempt property, and family allowance in the property of [Dale], and renounces all benefits which would otherwise pass to [Brenda] from [Dale] by intestate succession or by virtue of the provisions of any Will executed before this Settlement Agreement which she, as wife, or as widow, or otherwise, has had, now has, or might hereafter have against [Dale], or, in the event of his death, as an heir at law, surviving spouse, or otherwise. [Brenda] also waives and relinquishes any and all interest, present and future, in any and all property, real, personal, or otherwise, now owned by [Dale] or hereafter acquired, and including all property set aside for him in this agreement, it being the intention of the parties that this agreement shall be a full, final, and complete settlement of all matters in dispute between the parties hereto.

Brenda reviewed the agreement drafted by Poppe, but, in her judgment, "[a]t no time did it ever mention anything about beneficiary designation and at no time did I ever believe that that language took away beneficiary designation." She testified that Poppe did not tell her that the agreement could affect beneficiary designations on life insurance policies. She did not raise any concerns herself because "[t]here was nothing in [the agreement] about beneficiary designation. We did retain our own policies."

In August 2011, the district court dissolved Brenda and Dale's marriage. The court approved the property settlement agreement and incorporated it into the decree.

Dale died a week later. Brenda tried to claim the death benefit for two term life insurance policies owned by Dale, only one of which, with a death benefit of $250,000, concerns this appeal. The personal representative of Dale's estate argued that Brenda had waived her right to the death benefits in the property settlement agreement. The trial court agreed and ordered Brenda to withdraw her claim. Brenda appealed.

We affirmed the determination that Brenda had waived her interest as a beneficiary of Dale's life insurance policies in *Rice v. Webb*.[1] There, we explained that divorce does not affect a beneficiary designation in a life insurance policy. But a spouse may waive a beneficiary interest in the divorce decree. Synthesizing paragraphs VI, IX, and X of the property settlement agreement, we concluded that Brenda unambiguously gave up her right to claim the death benefits:

---

[1] *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014).

We find no ambiguity in the decree. Under paragraph VI, the life insurance policies in Dale's name were awarded to Dale, and under paragraphs IX and X(b), Brenda waived and relinquished all interest in property set aside to Dale. . . . Upon our independent review, we conclude as a matter of law that under the terms of the decree, Brenda unambiguously waived her beneficiary interest in Dale's life insurance policies.[2]

In 2014, Brenda filed this legal malpractice action against Poppe. She alleged that Poppe negligently failed to "advise [her] that the Agreement removed her as primary beneficiary on Dale's life insurance policy."

Poppe moved to dismiss, arguing that the complaint did not state a claim upon which relief could be granted and that he was entitled to judgment as a matter of law. Poppe submitted evidence in support of his motion, so the court converted the motion to dismiss into a motion for summary judgment. It informed the parties of this conversion and gave Brenda the opportunity to offer evidence.

The court entered a summary judgment for Poppe, stating that "an attorney owes no duty to tell clients something that is readily apparent to that client." It reasoned that Brenda did not need Poppe's help to interpret the property settlement agreement, because we determined in *Rice v. Webb* that the agreement was unambiguous.

## ASSIGNMENT OF ERROR

Brenda assigns, consolidated, that the court erred by sustaining Poppe's motion for summary judgment.

## STANDARD OF REVIEW

[1,2] We affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, and give that party the benefit of all reasonable inferences deducible from the evidence.[4]

[3,4] The applicability of claim and issue preclusion is a question of law.[5] When reviewing questions of law, we resolve the questions independently of the conclusion reached by the trial court.[6]

---

[2] *Id.* at 726-27, 844 N.W.2d at 301.

[3] *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015).

[4] *Id.*

[5] *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015).

[6] *Id.*

## ANALYSIS

### LEGAL MALPRACTICE

Brenda argues that Poppe committed malpractice by not asking what her and Dale's intentions were concerning their life insurance beneficiary designations and failing to explain the effect that the property settlement agreement would have on those designations. She contends that the "intricate rules of construction which may render a written settlement agreement that has been incorporated into a decree 'unambiguous' to members of the Nebraska Supreme Court do not apply equally to the uninitiated layperson."[7] Poppe responds that he had no duty to inform Brenda that she was waiving her beneficiary status, because the "fact she was doing so was readily apparent from the clear language of the Agreement."[8]

[5,6] The main purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled.[9] The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial.[10] If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[11]

[7] To succeed in a legal malpractice claim, a plaintiff must ultimately prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff.[12] Poppe does not dispute that Brenda employed him. So we turn to whether he neglected a reasonable duty.

[8,9] Attorneys owe their clients the duty to exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.[13] We insist that lawyers advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks.[14] In order to meaningfully decide whether to settle a controversy, a client must have the information necessary to assess the risks and benefits of settling or proceeding to trial.[15] And lawyers should make their best efforts to ensure that the client does not make a decision until the client has been informed of the relevant considerations.[16]

---

[7]  Brief for appellant at 7.

[8]  Brief for appellees at 13.

[9]  *Hughes v. School Dist. of Aurora, supra* note 3.

[10] *Id.*

[11] *Id.*

[12] *Balames v. Ginn*, 290 Neb. 682, 861 N.W.2d 684 (2015).

[13] See *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013).

[14] *Wood v. McGrath, North*, 256 Neb. 109, 589 N.W.2d 103 (1999).

[15] *Wolski v. Wandel*, 275 Neb. 266, 746 N.W.2d 143 (2008).

[16] *Id.* See 7A C.J.S. *Attorney & Client* § 378 (2015).

[10,11] So Poppe owed Brenda a duty to reasonably advise her about the property settlement agreement's effect on her interests.[17] And, as the summary judgment movant, he had the burden to produce evidence that he did not breach that duty. The general standard of an attorney's conduct is established by law, but whether an attorney's conduct fell below the standard in a particular case is a question of fact.[18] Expert testimony is generally required to show whether an attorney's performance conformed to the standard of conduct.[19] An attorney moving for summary judgment must generally make a prima facie case by producing expert testimony that his or her conduct did not fall below the standard of care.[20]

[12] Poppe did not offer any expert testimony. We note that Poppe could have offered his own affidavit stating that he met the standard of care.[21] His failure to do so means that he did not make a prima facie case unless the common-knowledge exception applies. Under the common-knowledge exception, expert testimony is not needed if the alleged negligence is within the comprehension of laypersons.[22] But we do not believe that whether a lawyer ought to discuss the effect of a property settlement agreement on life insurance beneficiary designations is so obvious that it is within the comprehension of laypersons. Poppe therefore did not produce evidence which, if uncontroverted at trial, would show that he did not neglect a reasonable duty.

[13] Because Poppe has failed to make a prima facie as to neglect of a reasonable duty, we turn to whether the court could find as a matter of law that Poppe's alleged negligence was not the proximate cause of Brenda's loss. A client cannot recover in a legal malpractice case if the client's own conduct caused his or her injury.[23] In cases revolving around documents which the client read or could have read, courts have discussed the client's failure to discover the error both in terms of causation and contributory negligence.[24] We have noted that a client's negligence in a legal malpractice case is often more relevant to negating the proximate cause element of the claim than to showing that the client's negligence was a contributing cause of the client's injury.[25]

---

[17] See *Balames v. Ginn, supra* note 12.

[18] *Guinn v. Murray, supra* note 13.

[19] *Id.*

[20] See, *Wolski v. Wandel, supra* note 15; *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999).

[21] See *Boyle v. Welsh, supra* note 20.

[22] See, *Wolski v. Wandel, supra* note 15; *Boyle v. Welsh, supra* note 20; 4 Ronald E. Mallen, Legal Malpractice § 37:127 (2016).

[23] *Balames v. Ginn, supra* note 12.

[24] Compare *Marion Partners v. Weatherspoon & Voltz*, 215 N.C. App. 357, 716 S.E.2d 29 (2011); *Hackers Inc. v. Palmer*, 79 Pa. D. & C.4th 485 (Pa. Com. Pl. 2006); *Gorski v. Smith*, 812 A.2d 683 (Pa. Super. 2002); *Tarleton v. Arnstein & Lehr*, 719 So. 2d 325 (Fla. App. 1998); and *Becker v. Port Dock Four, Inc.*, 90 Or. App. 384, 752 P.2d 1235 (1988), with *Little v. Middleton*, 198 Ga. App. 393, 401 S.E.2d 751 (1991); *Kushner v. McLarty*, 165 Ga. App. 400, 300 S.E.2d 531 (1983); and *Berman v. Rubin*, 138 Ga. App. 849, 227 S.E.2d 802 (1976).

[25] *Balames v. Ginn, supra* note 12, citing 3 Ronald E. Mallen & Allison Martin Rhodes, Legal Malpractice § 22:2 (2015).

A line of cases decided by the Georgia Court of Appeals illustrates when a client's failure to read or understand a document is the proximate cause of his or her injury arising from the same document. In *Berman v. Rubin*,[26] an attorney drafted a property settlement agreement for a client. The agreement stated that his client had a certain income and, should the client "'earn in excess of this said sum, the amount of child support per child for that year and alimony for the wife for that year shall be increased by 15% of such increase.'"[27] Later, the dissolution court construed the agreement to require the client to pay 15 percent of the excess earnings to each of his three children and to his wife, for a total of 60 percent of the excess earnings. The client apparently thought that his children and wife would share 15 percent of the excess. He sued his attorney for malpractice, and the trial court sustained the attorney's motion for summary judgment.

The Georgia Court of Appeals held that the client's "ability to read and comprehend, together with his failure to do so" broke the chain of causation.[28] The court emphasized that the settlement agreement was not ambiguous, not "technical," and not "laced with 'legal jargon.'"[29] But it cautioned that its conclusion was fact dependent:

> Our decision should not be read to state or imply that an attorney may not be held responsible for his negligent draftsmanship whenever the client can or does read the document. Indeed, where the document requires substantive or procedural knowledge, is ambiguous, or is of uncertain application, the attorney may well be liable for negligence, notwithstanding the fact that his client read what was drafted. This holding is simply that when the document's meaning is plain, obvious, and requires no legal explanation, and the client is well educated, laboring under no disability, and has had the opportunity to read what he signed, no action for professional malpractice based on counsel's alleged misrepresentation of the document will lie.[30]

The client admitted that he read the first draft of the agreement, asked for certain changes, read the changes, initialed each page, and signed the final page.

The court distinguished *Berman* in *Kushner v. McLarty*.[31] There, the client, a radiologist, retained an attorney to draft an employment contract between himself and a hospital. The client instructed the attorney to "ensure his retention as the hospital's radiologist."[32] The critical language in the contract was:

---

[26] *Berman v. Rubin, supra* note 24.

[27] *Id.* at 850, 227 S.E.2d at 804 (emphasis omitted).

[28] *Id.* at 855, 227 S.E.2d at 807.

[29] *Id.* at 854, 227 S.E.2d at 806.

[30] *Id.* at 854-55, 227 S.E.2d at 806.

[31] *Kushner v. McLarty, supra* note 24.

[32] *Id.* at 400, 300 S.E.2d at 532.

"The term of this Agreement shall be for three years and shall automatically be renewed for three years unless either party gives the other party at least 120 days written notice prior to the expiration of the three-year period. . . .

"During the initial term of this Agreement or any renewal term thereof, the services of the Radiologist as set forth herein, shall not be terminated by the Hospital except after 120 days written notice and after a determination has been made that the Radiologist is not providing adequate radiological services . . . . Further, no termination shall take effect . . . without the Radiologist being afforded a hearing . . . ."[33]

The client testified that he did not understand the contract. But he did "understand what [his attorney] told him it meant," which was that "the agreement said what he had intended."[34] Later, a court interpreted the contract to unambiguously allow the hospital to not renew the client's employment at the end of a 3-year term solely by giving the client notice. A determination of inadequate services and a hearing were necessary only if the hospital terminated the client's employment *during* a 3-year term. The client sued his attorney for malpractice, and the trial court, citing *Berman*, sustained the attorney's motion for a directed verdict.

The Georgia Court of Appeals reversed, stating that a prior judicial determination that the contract was unambiguous did not justify a directed verdict for the attorney. The *Kushner* court stated that the meaning of the employment contract was less obvious than the meaning of the property settlement agreement in *Berman*:

What was alleged to be negligent draftsmanship in *Berman* was the clear and unambiguous employment of non-technical semantics to effectuate an excessive financial consequence which should have been obvious to a well educated layman upon reading. In contrast, the professional decision in the instant case to separate the contractual terms relating to renewal/nonrenewal and termination into distinct subparagraphs was ultimately one having entirely legal, rather than purely financial, significance and consequences, which were not merely in excess of but directly contrary to [the client's] expressed intent.[35]

Because reasonable minds could disagree about whether the contract needed "legal knowledge or explanation to become clear to a layman," a question of fact existed concerning whether the client's own conduct was the proximate cause of his injury.[36]

The Georgia Court of Appeals similarly found that an issue of fact existed in *Little v. Middleton*.[37] There, the client retained an attorney to represent her in a suit for damages resulting from an automobile collision. The client agreed to settle the suit for the limit of the other driver's insurance coverage. She signed a written release of the other driver, and also released

---

[33] *Kushner v. Sou. Adventist &c. System*, 151 Ga. App. 425, 425-26, 260 S.E.2d 381, 382 (1979).

[34] *Kushner v. McLarty, supra* note 24, 165 Ga. App. at 403, 300 S.E.2d at 533.

[35] *Id.* at 402, 300 S.E.2d at 533.

[36] *Id.* at 403, 300 S.E.2d at 534.

[37] *Little v. Middleton, supra* note 24.

"[the other driver's] heirs, executors, administrators, agents and assigns, *and all other persons, firms or corporations liable or who might be claimed to be liable*, . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever . . . . [the client] hereby declares that the terms of this settlement and the foregoing notice have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims . . . ."[38]

The client later presented a claim to her own insurer for uninsured motorist benefits. Her insurer cited the release and denied the claim. The client sued her attorney for malpractice, and the attorney, citing *Berman*, moved for summary judgment. The trial court sustained the attorney's motion.

The appellate court reversed, reasoning that there was a question of fact whether the client should have understood that the general language in the release would bar her uninsured motorist claim:

Unlike the agreement in *Berman,* the document that was signed by [the client] did not *specify* the release of her [uninsured motorist] carrier and, if it does serve to release that otherwise unnamed carrier, it is solely because of the legal effect of the *general* wording that was employed therein.[39]

So it was for the jury to decide whether the release "'require[d] a legal knowledge or explanation to become clear to a layman.'"[40]

[14] As these cases show, whether a client's failure to read or understand the disputed document is a superseding cause depends on the facts.[41] It is true, as Poppe notes, that it is no defense to the formation of a contract that a person did not read or understand the document which he or she signed.[42] But Brenda is not arguing that the agreement, incorporated by the dissolution court as part of the decree itself, is not enforceable. Her signature does not estop her from pursuing Poppe for malpractice.[43]

Poppe notes that we have held that the statute of limitations for legal malpractice claims sometimes runs from the date that the client signs a document. Under Neb. Rev. Stat. § 25-222

---

[38] *Id.* at 393-94, 401 S.E.2d at 752 (emphasis in original).

[39] *Id.* at 395, 401 S.E.2d at 753 (emphasis in original).

[40] *Id.* at 395, 401 S.E.2d at 754.

[41] See, *Winston v. Brogan*, 844 F. Supp. 753 (S.D. Fla. 1994); *De La Maria v. Powell, Goldstein, Frazer & Murphy*, 612 F. Supp. 1507 (N.D. Ga. 1985); *Paul v. Smith, Gambrell & Russell*, 283 Ga. App. 584, 642 S.E.2d 217 (2007); *Sutton v. Mytich*, 197 Ill. App. 3d 672, 555 N.E.2d 93, 144 Ill. Dec. 196 (1990); 3 Ronald E. Mallen, Legal Malpractice § 22:3 (2016). But see, *Tarleton v. Arnstein & Lehr*, 719 So. 2d 325 (Fla. App. 1998); *Beattie v. Brown & Wood*, 243 A.D.2d 395, 663 N.Y.S.2d 199 (1997).

[42] See, e.g., *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015).

[43] See, *Winston v. Brogan, supra* note 41; *McWhorter, Ltd. v. Irvin*, 154 Ga. App. 89, 267 S.E.2d 630 (1980); *Arnav Retirement Trust v. Brown*, 96 N.Y.2d 300, 751 N.E.2d 936, 727 N.Y.S.2d 688 (2001), *overruled in part on other grounds, Oakes v. Patel*, 20 N.Y.3d 633, 988 N.E.2d 488, 965 N.Y.S.2d 752 (2013).

(Reissue 2008), a claim for legal malpractice accrues upon the attorney's negligent act or omission. But, under § 25-222, if the plaintiff could not discover the act or omission within the limitations period, he or she may bring suit within 1 year from the earlier of "the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery." In *Interholzinger v. Estate of Dent*,[44] the clients sued their attorney for malpractice related to a listing agreement. We held that the limitations period began to run against one of the clients when he signed the listing agreement. But the limitations period on the other client's claim did not run when he signed the agreement, because he was unable to read it and no one explained it to him. In *Nichols v. Ach*,[45] we held that the statute of limitations began to run on the plaintiffs' malpractice claims on the day they signed a stock purchase agreement. We rejected their argument that they did not understand the import of the document, because the evidence showed that they were experienced in business matters and in fact understood what the agreement meant.

These cases show that attorneys are not always insulated from malpractice liability because their clients read or ought to have read the documents themselves. Instead, they "stand only for the proposition that for purposes of determining when an action for alleged legal malpractice begins to run, a client must know what lay persons of ordinary intelligence are deemed to know."[46] We would not have discussed the statute of limitations at all in *Interholzinger* and *Nichols* if the fact that the plaintiffs signed the documents was an absolute bar to recovery. A rule that insulates attorneys from liability as a matter of law on the theory that clients ought to know what they are signing ignores the fact that laypersons often hire attorneys *because* they lack the knowledge and skills needed to understand the transaction.[47]

We conclude that reasonable minds could disagree concerning whether Poppe's failure to advise Brenda about the effect of the property settlement agreement on beneficiary designations was the proximate cause of Brenda's loss. The property settlement agreement here is more akin to the release in *Little* than the agreement in *Berman*. It does not speak specifically about beneficiary designations in life insurance policies. Instead, it speaks generally about "rights," "claims," "interests," "obligations," "benefits," and "property." The agreement leaves it to the reader to span multiple pages and determine that "the legal effect of the *general* wording" is that the parties waive their inchoate entitlement to the death benefits under the other party's life insurance policies.[48] Our holding that the agreement, which the court incorporated into its decree, was unambiguous does not entitle Poppe to a summary judgment. As we stated in *Rice v. Webb*, an agreement is ambiguous if it is susceptible of at least two reasonable but conflicting

---

[44] *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983).

[45] *Nichols v. Ach*, 233 Neb. 634, 447 N.W.2d 220 (1989), *disapproved in part on other grounds, Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992). See, also, *Smith v. Ganz*, 219 Neb. 432, 363 N.W.2d 526 (1985).

[46] *Nichols v. Ach, supra* note 45, 233 Neb. at 643, 447 N.W.2d at 227 (Caporale, J., concurring). See *In-Line Suspension v. Weinberg & Weinberg*, 12 Neb. App. 908, 687 N.W.2d 418 (2004).

[47] See *Winston v. Brogan, supra* note 41.

[48] *Little v. Middleton, supra* note 24, 198 Ga. App. at 395, 401 S.E.2d at 753.

meanings.[49] That an agreement is susceptible of only one reasonable meaning does not mean that this meaning would be apparent to a layperson. Indeed, the sole reasonable meaning might not always be immediately apparent to a judge. Poppe did not offer any evidence about Brenda's level of sophistication. Because reasonable minds could disagree over whether the meaning of the agreement was clear without the need for legal skill and knowledge, the court could not say as a matter of law that Brenda's own conduct was the proximate cause of her loss.[50]

## ISSUE PRECLUSION

Alternatively, Poppe argues that the doctrine of issue preclusion entitles him to judgment as matter of law. He reasons that "Brenda is precluded from arguing that she needed [Poppe's] legal advice to understand the Agreement" because we held in *Rice v. Webb* that the agreement was unambiguous.[51]

[15] Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate.[52] Issue preclusion applies if (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.[53]

Here, issue preclusion does not bar Brenda's malpractice claim against Poppe, because we did not decide an identical issue in *Rice v. Webb*. The issue in that case--whether Brenda waived her beneficiary interest under Dale's life insurance policies--is not the same as any of the dispositive issues in this case. Brenda must prove three elements to succeed in her legal malpractice claim: (1) She employed Poppe, (2) Poppe neglected a reasonable duty, and (3) Poppe's negligence resulted in and was the proximate cause of loss to Brenda.[54] Our decision in *Rice v. Webb* established that Brenda unambiguously waived her beneficiary interest in the decree. We did not decide whether Poppe neglected a reasonable duty. As explained above, the determination that the decree is unambiguous is not fatal to any element of Brenda's malpractice claim.

---

[49] *Rice v. Webb, supra* note 1.

[50] See 3 Mallen, *supra* note 41.

[51] Brief for appellees at 15.

[52] *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014).

[53] *Id.*

[54] See *Balames v. Ginn, supra* note 12.

CONCLUSION

We conclude that Poppe, the summary judgment movant, failed to produce evidence which would entitle him to a judgment if unopposed at trial. We therefore reverse the summary judgment and remand for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

STACY and KELCH, JJ., not participating.